# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3969 | **DATE** | 8/14/2001 |
| **CASE TITLE** | Gonzales vs. Kid Zone, Ltd et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 8/23/2001 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** The Court makes the following findings of fact and conclusions of law: 1. Plaintiff's copyright was infringed. 2. No act by co-defendant Becker constituted willful infringement. All lead counsel are to appear at the August 23, 2001 status hearing at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 15 2001 | Document Number |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 26 |
| | Copy to judge/magistrate judge. | | AUG 14 2001 | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED FOR DOCKETING
01 AUG 14 AM 11: 18

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID B. GONZALES )
d/b/a GONZALES GRAPHICS, )
)
Plaintiff, )
)
vs. )          00 C 3969
)
KID ZONE, LTD., d/b/a Century Vending, )
L.M. BECKER & CO., INC., d/b/a Kid )
Zone and TRANSFER TECHNOLOGIES, INC., )
)
Defendants. )

DOCKETED

AUG 1 5 2001

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

### A. PROCEDURAL POSTURE

At a pretrial conference on April 18, 2001, counsel for Plaintiff David Gonzales and counsel for co-defendant L.M. Becker agreed to submit their factual and legal differences to the Court for resolution. The parties subsequently filed an agreed statement of facts, followed by affidavits, exhibits and legal briefs in support of their respective positions. In this Opinion we have identified and resolved those factual and legal differences.

26

## B. FINDINGS OF FACT

Plaintiff David B. Gonzales is an individual and a resident of the state of California having an address of 902 Yosemite Way, Suisan, California 94585. (Agreed Statement of Facts of May 14, 2001 (hereinafter "ASF") ¶ 1.) He owns the following copyright registration numbers issued from an application he filed on May 4, 1993:

- Registration number VA 564,692 for the work entitled Virgen de Guadalupe
- Registration number VA 564,698 for the work entitled Mexican American
- Registration number VA 564,702 for the work entitled Aztec Logo Gonzales Graphics
- Registration number VA 564,707 for the work entitled Puro Mexicano

(Id. ¶¶ 2-5.) Each of these registration numbers remains in full force and effect. (Id.)

In the April 2000 issue of the publication *Vending Times*, an advertisement appeared incorporating exact copies of Plaintiff's four copyrighted artworks. (Id. ¶ 6.) The advertisement was attributed to co-defendant Kid Zone. (Id.) The previous month, on March 8, co-defendant L.M. Becker & Co. ("Becker") had acquired all of the assets of co-defendant Kid Zone, Ltd. ("Kid Zone"). (Id. ¶ 6.) Becker did not, however, acquire Kid Zone's liabilities. (Campbell Decl. ¶ 3.)

At some unspecified time, Kid Zone requested that co-defendant Transfer Technologies, Inc. ("Transfer Technologies") design tattoos "in the same flavor" as Plaintiff's artwork.[1] (Exh. 9 to Pl.'s Proof, Interrog. 22.) Transfer Technologies, not

---

[1] Because Plaintiff has supplied us only with the answers to the interrogatories, and not the interrogatories themselves, we are unable to discern a precise date. That date is not material to our analysis, however.

Becker, designed the tattoos. (Campbell Decl. ¶ 9; English Decl. ¶ 4.) No Becker agent or employee was involved in the design. (Campbell Decl. ¶ 4.) Transfer Technologies did supply Kid Zone with samples of proofs of all art for approval before it printed the job. (Exh. 8, Pl.'s Proof.) David English, the president of Transfer Technologies, repeatedly advised both Becker and Kid Zone that the tattoo designs were originals that differed significantly from Plaintiff's work. (English Decl. ¶ 4.)

On April 24, 2000 Becker issued Purchase Order 7244 to Co-defendant Transfer Technologies for 500,000 "Mexican Tattoos" to be shipped to Becker's Chicago office. (ASF ¶ 6.) By check dated April 27, 2000, Becker paid a deposit on its orders of $16,666.66 to Transfer Technologies and owed $33,333.00 for its remainder of its purchase order. (Id.) Becker received Mexican Tattoos from Transfer Technologies on or about June 20, 2000 in its Kid Zone Chicago office. (Id. ¶ 7.) Becker did not have permission from Plaintiff to use, copy, reproduce, distribute, or sell his copyrighted artwork. (Id. ¶ 8.)

On June 30, 2000, Plaintiff filed and served his original Complaint on Kid Zone. (Id. ¶ 9.) The Complaint did not name Becker as a party, nor was it ever served on Becker. (Id.; Campbell Decl. ¶ 5.) A few months later, on September 5, 2000, Plaintiff filed an Amended Complaint naming Becker and Transfer Technologies, Inc. as co-defendants with Kid Zone. (Id. ¶ 10.) After receiving the Amended Complaint, Becker made no sales of the tattoos. (Campbell Decl. ¶ 7.) Becker answered the Complaint

on October 27, 2000 and filed an Amended Answer on December 27, 2000. (ASF ¶ 10.)

## C. CONCLUSIONS OF LAW

Issues of law have arisen in two areas: literal infringement and willfulness. We treat each of these issues in turn below.

### 1. *Literal Infringement*

Becker concedes that the tattoos that appeared in *Vending Times* contained exact copies of Plaintiff's four copyrighted artworks. (ASF ¶ 6.) That disposes of the issue of literal infringement in favor of Plaintiff.

### 2. *Willfulness*

Plaintiff contends that Becker's alleged infringement was willful. However, Plaintiff simply cannot prevail on the few facts it has marshaled in an attempt to support this claim.

First and foremost, Plaintiff has failed to create a genuine issue of material fact as to Becker's liability for Kid Zone's alleged infringement. Becker purchased Kid Zone's <u>assets</u>. (Campbell Decl. ¶ 3.) Under Illinois law, the well-settled general rule is that a corporation that purchases the assets of a corporation is not liable for the debts or liabilities of the transferor corporation. <u>See</u> <u>Vernon v. Schuster</u>, 688 N.E.2d 1172, 1175 (Ill. 1997). Developed "as a response to the need to protect bonafide purchasers from unassumed liability," the rule was "designed to maximize the fluidity of corporate

assets." Id. Four exceptions to the rule exist to offset its potentially harsh impact: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. See Steel Co. v. Morgan Marshall Indus., Inc., 662 N.E.2d 595 (1996); Green v. Firestone Tire & Rubber Co., 460 N.E.2d 895 (1984).

Plaintiff asserts that Becker is merely a continuation of Kid Zone, thus satisfying the third exception to the nonliability rule. The continuation exception to the rule of successor corporate nonliability applies when the purchasing corporation is merely a continuation or reincarnation of the selling corporation. See Vernon, 688 N.E.2d at 1175. Put otherwise, the purchasing corporation maintains the same or similar management and ownership but merely "wears different clothes." Bud Antle, Inc. v. Eastern Foods, Inc., 758 F.2d 1451, 1458 (7th Cir. 1985). To determine whether the exception applies, we must ascertain whether there is a continuation of the corporate entity of the seller. Vernon, 688 N.E.2d at 1176. The majority of courts emphasize a common identity of officers, directors, and stock between the selling and purchasing corporation as the key element of continuation. See Tucker v. Paxson Machine Co., 645 F.2d 620, 623 (8th Cir. 1981). In accord with this majority rule, the Illinois appellate court has consistently required identity of ownership before imposing

successor liability under the continuation exception. <u>Nilsson v. Continental Machine Mfg. Co.</u>, 621 N.E.2d 1032, 1035 (Ill. App. 1993) (citing cases).

In the case at bar, Becker purchased the assets of Kid Zone. (Campbell Decl. ¶ 3.) Becker did not assume the liabilities or other obligations of Kid Zone. (<u>Id.</u>; <u>see</u> <u>Vernon</u>, 688 N.E.2d at 1175). However, Plaintiff believes that Becker meets the criteria for the continuation exception and thus assumes Kid Zone's liabilities. In support of this belief, Plaintiff cites the following facts:

- Becker's name appears in two advertisements for Kid Zone in *Vending Times*. In the first advertisement, the words "Member N.B.V.A. L.M. Becker & Co., Inc." appear in fine print in the bottom left corner. In the second advertisement, a copyright notice appears in the same fine print in the corner: "© L.M. Becker & Co., Inc." Both advertisements appeared after Becker acquired Kid Zone's assets. (Exhs. A & B, Pl.'s Reply.)
- The initial purchase order for the allegedly infringing tattoos was dated April 24, 2000, nearly two months after Becker's acquisition of Kid Zone.

None of these facts can support the continuation exception because none of them pertains to identity of ownership. <u>See</u> <u>Nilsson</u>, 621 N.E.2d at 1035(citing long line of Illinois cases requiring identity of ownership before imposing successor liability under the continuation exception). Without evidence of the identity of ownership – namely, whether there was a common identity of officers, directors, and stock between the selling and purchasing corporation, <u>see</u> <u>Tucker</u>, 645 F.2d at 623 – Plaintiff cannot support its claim of Becker's liability. Accordingly, the claim must fail.

In the alternative, even if Becker were liable for the infringement, the infringement was not willful. In support of his willfulness claim, Plaintiff points to two facts:

- KidZone asked Transfer Technologies to produce tattoos in the same flavor as Plaintiff's artwork. (Exh. 9, Pl.'s Proof.)

- In an October 20, 2000 letter to Kid Zone employee Neel Clark, Transfer Technologies President David English recalled having "supplied you with samples and proofs of all art for your approval before we printed the job." (Exh. 8, Pl.'s Proof.)

These facts fail to generate a material issue as to willfulness. In the first place, a request to produce tattoos "in the flavor" of Plaintiff's artwork is not tantamount to a deliberate instruction to copy Plaintiff's work, as Plaintiff would have us believe. The bottom line is that Transfer Technologies, not Becker, designed the allegedly infringing tattoos. (Campbell Decl. ¶ 9; English Decl. ¶ 4.) No Becker employee or agent was involved in the design. (Campbell Decl. ¶ 9.)

Secondly, Kid Zone's later approval of the art does not rise to the level of willfulness because Plaintiff has failed to indicate that Kid Zone had any inkling that the art allegedly infringed Plaintiff's work. Indeed, Transfer Technologies' President asserts in an affidavit that he repeatedly advised both Becker and Kid Zone that the tattoo designs were originals that differed significantly from Plaintiff's work. (English Decl. ¶ 4.)

Plaintiff also cites as evidence of willfulness Becker's failure to cease selling the tattoos after having been served the Complaint. The facts do not bear out this assertion, however. Plaintiff's original Complaint was never served on Becker. (Docket for 00C3969, Entry #2; Campbell ¶ 5.) More than two months later, on or around September 6, 2000, Plaintiff served an Amended Complaint on Becker. (Docket for 00C3969, Entry #5; ASF ¶ 10.) Becker made no sales of the tattoos after it received the Amended Complaint. (Campbell Decl. ¶ 7.) Thus Plaintiff has failed to generate any issues of material fact with respect to Becker's willful disregard of the filing of the suit against it.

## CONCLUSION

The Court makes the following findings of fact and conclusions of law:

1. Plaintiff's copyright was infringed.

2. No act by co-defendant Becker constituted willful infringement.

Charles P. Kocoras
United States District Judge

Dated: _August 14, 2001_